FILED

2015 APR 10 AM 10:30

CLERK, US DISTRICT COURT
MIDDLE DIST. OF FL
OCALA FLORIDA

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THOMAS A. CURLEY,

    Plaintiff,

v.                                                Case No.:   5:15-cv-183-OC-30PRL

LIFESTREAM BEHAVIORAL
CENTER, INC.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    The Plaintiff, Thomas A. Curley (hereinafter "Curley"), by and through undersigned counsel, hereby brings this action against Defendant, Lifestream Behavioral Center, Inc. (hereinafter "Lifestream") for discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, codified as amended at 29 U.S.C. § 794 ("Section 504") and Title III of the Americans with Disabilities Act, codified as amended at 42 U.S.C. § 12101 *et seq.* ("ADA"); and for the common law torts of negligence and negligent training and/or negligent supervision of employees in violation of Florida common law. Curley further states as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for denial of reasonable accommodation of disability, based on the exclusion of Curley's service animal, a black/tan Chihuahua named Tinker (hereinafter "Tinker" or "service animal") from Defendant's 24 Hour Access Center and Psychiatric Hospital when Curley was

1

involuntarily admitted and examined at those facilities on January 26 and 27, 2015.

2. Due to the exclusion of Tinker from Lifestream facilities, Curley suffered severe exacerbation of symptoms related to his disabilities of post-traumatic stress disorder, severe depression and chronic anxiety.

3. The denial of access to Tinker subjected Curley to discrimination on the basis of disability at the Lifestream facilities.

4. Curley's damages were the reasonably foreseeable result of Lifestream's negligent training and/or negligent supervision of one or more employees.

5. Lifestream is directly responsible for the negligent conduct of its employee or employees who informed the Sumter County Sheriff's Office that service animals were not permitted in Lifestream facilities, resulting in reasonably foreseeable harm to Curley.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over Curley's Section 504 and ADA claims.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Curley's common law claims for negligence and negligent training and/or negligent supervision, which are so related to Curley's claims within this Court's original jurisdiction that they form part of the same case or controversy.

8. Venue is proper in this District under 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this District, and the principal place of operations of Defendant Lifestream is located in this District.

## PARTIES

9. The Plaintiff, Thomas A. Curley ("Curley") is a resident of Webster, Florida.

10. Curley is an individual with a disability within the sense of 42 U.S.C. § 12102(2)(A), based on his mental impairments of post-traumatic stress disorder, severe depression, and chronic anxiety, which substantially limit Curley in multiple major life activities, including thinking, communication, and social interaction.

11. The Defendant, Lifestream Behavioral Center, Inc. ("Lifestream"), is a Florida corporation operating a psychiatric hospital and related inpatient and outpatient facilities, including the 24 Hour Access Center ("Access Center") and Psychiatric Hospital, both located at 2020 Tally Road, Leesburg, Florida.

12. Lifestream's principal place of business is at 515 W. Main St., Leesburg, FL 34748, within this District.

13. Lifestream receives funding from the federal Substance Abuse and Mental Health Services Administration. As a condition of receiving federal funds, Lifestream is subject to the requirements of Section 504.

14. Lifestream constitutes a program or activity receiving federal funding pursuant to 29 U.S.C. § 794(b).

15. Lifestream is a place of public accommodation pursuant to 42 U.S.C. § 12181(7) and is therefore subject to the requirements of Title III of the ADA.

16. Lifestream acknowledges on its website, www.lsbc.net, that it is subject to the requirements of Section 504 and Title III of the ADA.

17. Lifestream's website includes a page setting forth a Notice Under the Americans with Disabilities Act ("ADA Notice Page"), stating "Lifestream is committed to providing equal access to all persons with disabilities, including Lifestream consumers, potential consumers, companions and others." A true and complete copy of Lifestream's ADA Notice Page, as accessed on April 2, 2015, is attached hereto as **Exhibit A.**

## FACTS

18. On January 26, 2015, while Curley was at home in his residence with his service dog Tinker, Curley placed a phone call to his insurance provider, Optimum Healthcare ("Optimum").

19. During his conversation with a representative of Optimum, identified only as "Lorena," Curley became upset because Optimum would not provide Curley authorizations and/or referrals for medical services, including cardiology services.

20. Curley has frequently experienced frustration based on Optimum's failure to provide him with authorizations and/or referrals for medical services requested by Curley.

21. On this occasion, Curley became angry at what he perceived as Optimum's unreasonable refusal to authorize and/or refer him for medical services, and stated "I'll pull the plug on you guys." Curley intended this remark to express his anger at Optimum.

22. Lorena, the Optimum representative speaking to Curley, apparently misunderstood his remark. Lorena apparently believed that Curley had said "I want to pull the plug" and that he was threatening suicide.

23. Lorena, on behalf of Optimum, contacted the Sumter County Sheriff's Office and told them that Curley had threatened suicide.

24. The Sumter County Sheriff's Office dispatched several deputies to Curley's residence to take him into custody for involuntary examination pursuant to Florida Statutes § 394.463, commonly known as the "Baker Act," which permits involuntary mental health examination in certain circumstances.

25. Lifestream's Access Center and the associated Psychiatric Hospital constitute a designated receiving facility for involuntary mental health examinations.

26. When Curley was informed that he would be taken into custody for an involuntary mental health examination at Lifestream, Curley requested to bring Tinker with him.

27. At that time, Tinker was wearing a vest displaying the words "Service Dog on Duty."

28. Curley also showed the Sumter County deputies his service animal card, stating that he required access to his service animal as an accommodation of his disabilities. Curley's service animal card also states that he should not be excluded from places of public accommodation based on his need for a service animal and should not be asked to remove his service animal from a place of public accommodation unless the animal is out of control or posing a direct threat to others.

29. Curley also showed the Sumter Country deputies a letter from his physician, Doctor Tanveer Chaudhry, M.D. ("Chaudhry"), stating that Curley required access to his service animal as an accommodation of his disability of post-

traumatic stress syndrome and that Curley should not be denied access to his service animal or excluded from public places based on his need for a service animal.

30. Call logs of the Sumter County Sheriff's Office indicate that a dispatcher called Lifestream to ask whether Curley could bring his service animal with him to the Lifestream Access Center and Psychiatric Hospital.

31. The call logs indicate that the Sumter County Sheriff's Office dispatcher asked Lifestream specifically if the facilities would accept a patient with "a small service dog."

32. The call logs indicate that Lifestream informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream facilities.

33. As a result, the Sumter County Sheriff's Office dispatcher called animal control to take custody of Tinker.

34. Curley was extremely upset and anxious that Tinker would be taken by animal control. Curley was able to arrange for a neighbor to take custody of Tinker temporarily in order to avoid having Tinker taken by animal control.

35. Curley was then separated from Tinker and taken to Lifestream's Access Center facility. Curley arrived at the Access Center at approximately 1:30 pm on January 26, 2015.

36. Promptly upon arrival at the Access Center, Curley began to request access to his service animal.

37. An Applicant Status Form completed by Lifestream employee Candeace C. at 2:48 pm states that Curley "refused to advise of any medical conditions except the request of his service dog. NS advised to send out for medical clearance."

38. Curley was then taken from the Lifestream Access Center to Leesburg Regional Medical Center for medical clearance.

39. Due to Lifestream's refusal to allow Curley to bring Tinker to the Access Center, and Lifestream's failure to respond appropriately to Curley's request for access to Tinker upon arrival at the Access Center, Curley was not accompanied by Tinker at Leesburg Regional Medical Center.

40. Once Leesburg Regional Medical Center verified that Curley was not suffering from medical complications, Curley was transferred back to Lifestream, returning to the Access Center at approximately 8:10 pm of January 26, 2015.

41. Curley was then held overnight at Lifestream.

42. The Psychiatric Evaluation of Curley completed by Lifestream employee Efrain Mendez ("Mendez") at 9 am on January 27, 2015 shows that Mendez was aware that Curley had requested his service dog at the time of his initial arrival at the Lifestream Access Center.

43. The Psychiatric Evaluation completed by Mendez also states "Under the area of BUFFERS/CONNECTIVENESS, individual reported that he has support from a friend and a service dog."

44. Mendez further states in the Psychiatric Evaluation that Curley "began complaining about not having his service dog and that this is a violation of his rights."

7

45. There is no indication that Candeace C., Mendez or any other Lifestream employee made any effort to assist Curley in regaining access to his service animal, despite being aware of Curley's repeated requests for access to Tinker and despite knowing that Tinker played an important role in providing emotional support to Curley.

46. The Continued Care Summary regarding Curley, completed by Lifestream Clinician and Discharge Planner Andrea Mason, again acknowledges Curley's repeated requests for his service animal and again shows awareness that Tinker played an important role in providing emotional support to Curley.

47. The experience of being held at Lifestream without his service animal caused severe exacerbation of Curley's conditions of post-traumatic stress disorder and chronic anxiety, including flashbacks to prior traumatic events, as well as severe emotional distress including fear that Curley would not be reunited with Tinker.

48. Without Tinker to console him, the flashbacks Curley suffered at Lifestream were unusually intense and caused severe emotional and physical distress, including panic reactions, intense fear, nightmares, crying and feelings of hopelessness.

49. Even after release from Lifestream and being reunited with Tinker, Curley has continued to suffer exacerbated symptoms, especially increased flashbacks and associated panic reactions. He has also suffered from being unable to sleep due to nightmares and flashbacks. He has been crying excessively and has had difficulty leaving his house.

50. Curley's exacerbated symptoms are directly caused by the exclusion of Tinker from Lifestream facilities.

51. Curley's severe emotional and physical distress resulting from his exacerbated symptoms, including the increased flashbacks to past traumatic events and associated panic reactions, are also directly caused by the exclusion of Tinker from the Lifestream Access Center and Psychiatric Hospital.

52. Curley has also been required to spend money to obtain corrective retraining for Tinker, necessitated by the period during which Tinker was in the custody of Curley's neighbor.

53. Curley's neighbor treated Tinker like a pet rather than a service animal while Tinker was in the neighbor's home, which had the effect of interfering with Tinker's training.

54. The corrective retraining required Curley to incur expenses that were directly caused by the disability discrimination and negligence of Lifestream and its employees.

55. Curley further alleges that Lifestream negligently trained and/or negligently supervised one or more of its employees, and that Curley's damages are the reasonably foreseeable result of Lifestream's negligent training and/or negligent supervision of the employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in Lifestream facilities.

56. Lifestream is also directly liable under the doctrine of *respondeat superior* for the negligent conduct of the employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream facility. This negligent conduct was within the scope of employment of the employee(s) and pertained to non-delegable duties of Lifestream.

## COUNT I: VIOLATION OF SECTION 504

57. Paragraphs one (1) through fifty-six (56) are re-alleged as if fully set forth herein.

58. As a recipient of federal financial assistance, Lifestream is subject to the requirements of the Rehabilitation Act of 1973 generally and 29 U.S.C. § 794 (commonly known as "Section 504") in particular. Section 504 prohibits Lifestream from subjecting an individual with a disability to discrimination with respect to participation in any "program or activity" operated by Lifestream. The term "program or activity" as defined in 29 U.S.C. § 794(b) includes all of Lifestream's operations.

59. Lifestream subjected Curley to discrimination on the basis of disability by denying him access to his service animal during his involuntary placement at and examination by Lifestream on January 26 and 27, 2015.

60. Pursuant to 29 U.S.C. § 705(20)(B), the Rehabilitation Act incorporates by reference the definitions of disability set forth at 42 U.S.C. § 12102(2), for purposes of subchapter C of the Rehabilitation Act, including Section 504.

61. Curley is an individual with a disability pursuant to 42 U.S.C. § 12102(2)(A), based on his mental impairments of post-traumatic stress disorder, severe depression, and chronic anxiety, which substantially limit Curley in multiple major life activities, including thinking, communication, and social interaction.

62. Curley's service animal, Tinker, is able to console him so as to ameliorate the harmful symptoms of Curley's disabilities and increase Curley's ability to take part in major life activities. As such, accompaniment by Tinker is a reasonable accommodation of Curley's disabilities.

63. The exclusion of Tinker from the Lifestream Access Center and Psychiatric Hospital denied Curley reasonable accommodation of his disability and thereby subjected him to discrimination on the basis of disability.

64. By and through its conduct subjecting Curley to disability discrimination, Lifestream caused significant harm to Curley, including: increased flashbacks and associated panic reactions, severe emotional and physical distress, intense fear, nightmares, inability to sleep, excessive crying and feelings of hopelessness, and other exacerbated symptoms of his disabilities.

65. Exclusion of Tinker from Lifestream facilities also required Curley to spend money for retraining of Tinker, because the neighbor who held Tinker for Curley treated Tinker like a pet, causing interference with Tinker's training. The expenses to retrain Tinker were directly caused by the exclusion of Tinker from Lifestream facilities.

WHEREFORE, Plaintiff Thomas A. Curley requests judgment be entered in his favor against Defendant Lifestream Behavioral Center, Inc. and requests the following relief:

    a. An award of compensatory damages as authorized by 29 U.S.C. § 794a(a)(2);

    b. Prejudgment and post-judgment interest as provided by law;

    c. An award of costs, including a reasonable attorney's fee as authorized by 29 U.S.C. § 794a(b);

    d. Such other legal and equitable relief as this Court considers appropriate and just.

## COUNT II: VIOLATION OF TITLE III OF THE ADA

66. Paragraphs one (1) through sixty-five (65) are re-alleged as if fully set forth herein.

67. As a provider of public accommodations whose operations affect commerce, Lifestream is subject to the requirements of Title III of the Americans with Disabilities Act, including the prohibition of disability discrimination set forth at 42 U.S.C. § 12182.

68. 42 U.S.C. § 12182(b)(2)(A)(ii) specifically prohibits, and defines as disability discrimination, "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are reasonably necessary to afford ... accommodations to individuals with disabilities."

69. Curley is an individual with a disability pursuant to 42 U.S.C. § 12102(2)(A), based on his mental impairments of post-traumatic stress disorder, severe depression, and chronic anxiety, which substantially limit Curley in multiple major life activities, including thinking, communication, and social interaction.

70. Curley's service animal, Tinker, is able to console him so as to ameliorate the harmful symptoms of Curley's disabilities and increase Curley's ability to take part in major life activities. As such, accompaniment by Tinker is a reasonable accommodation of Curley's disabilities.

71. Lifestream violated 42 U.S.C. § 12182 by failing to make reasonable modifications to its policies, practices, or procedures to allow Tinker to accompany Curley during Curley's involuntary stay at Lifestream on January 26 and 27, 2015.

72. By and through its violation of 42 U.S.C. § 12182, Lifestream caused significant harm to Curley, including: increased flashbacks and associated panic reactions, severe emotional and physical distress, intense fear, nightmares, inability to sleep, excessive crying and feelings of hopelessness, and other exacerbated symptoms of his disabilities.

73. Curley anticipates that he and other persons similarly situated will likely be subjected to further disability discrimination by Lifestream unless Lifestream is required to make reasonable modifications to its policies, practices and/or procedures so as to ensure compliance with 42 U.S.C. § 12182(b)(2)(A)(ii).

WHEREFORE, Plaintiff Thomas A. Curley requests judgment be entered in his favor against Defendant Lifestream Behavioral Center, Inc. and requests the following relief:

> a. An award of injunctive relief requiring Lifestream to promulgate and comply with procedures to ensure that Lifestream will allow persons who use service animals to have equal access to Lifestream, by ensuring such persons will not be deprived of their service animals within any Lifestream facility;
>
> b. An award of injunctive relief requiring Lifestream to post explicit and clearly worded notices in all Lifestream facilities, stating Lifestream will provide access to persons who use service animals and will not deprive such persons of their service animals within any Lifestream facility;

c. An award of injunctive relief requiring Lifestream to train its employees in the legal standards relating to service animals, to ensure that Lifestream employees will take reasonable actions to modify and/or seek modification of policies, practices and/or procedures of the Lifestream facility when necessary to allow service animals to accompany disabled individuals at any Lifestream facility;

d. An award of injunctive relief requiring Lifestream to employ one or more specialized compliance officers with the duty to ensure that service animals necessary to provide accommodation of disability are not unreasonably excluded from any Lifestream facility;

e. An award of costs, including a reasonable attorney's fee as authorized by 42 U.S.C. § 2000a-3(b);

f. Such other legal and equitable relief as this Court considers appropriate and just.

## COUNT III: NEGLIGENT TRAINING/NEGLIGENT SUPERVISION

74. Paragraphs one (1) through seventy-three (73) are hereby re-alleged as if fully set forth herein.

75. Lifestream negligently trained and/or negligently supervised one or more of its employees, including the employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream Access Center and Psychiatric Hospital.

76. Curley's damages are the reasonably foreseeable result of Lifestream's negligent training and/or negligent supervision of the employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream Access Center and Psychiatric Hospital.

77. Curley's damages were directly and proximately caused by the negligent training and/or negligent supervision of the Lifestream employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream Access Center and Psychiatric Hospital.

78. It is reasonably foreseeable that Curley and other persons who depend on a service animal for reasonable accommodation of disability would suffer damages from unreasonable or unnecessary exclusion of a service animal from the Lifestream Access Center and Psychiatric Hospital.

79. As such, Curley was within the zone of risk created by the negligent training and/or negligent supervision of the Lifestream employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in Lifestream facilities.

80. Curley's damages include increased flashbacks and associated panic reactions, severe emotional and physical distress, intense fear, nightmares, inability to sleep, excessive crying and feelings of hopelessness, and other exacerbated symptoms of his disabilities.

81. The type(s) of damages suffered by Curley are within the zone of risk created by the negligence complained of herein. The type(s) of damages suffered by Curley

were reasonably foreseeable by Lifestream as a consequence of unreasonable or unnecessary exclusion of a service animal from Lifestream facilities.

WHEREFORE, Plaintiff Thomas A. Curley requests judgment be entered in his favor against Defendant Lifestream Behavioral Center, Inc. and requests the following relief:

    a. An award of compensatory damages;

    b. Prejudgment and post-judgment interest as provided by law;

    c. Such other relief as this Court considers appropriate and just.

### COUNT IV: NEGLIGENCE (*RESPONDEAT SUPERIOR*)

82. Paragraphs one (1) through eighty-one (81) are hereby re-alleged as if fully set forth herein.

83. Curley was within the zone of risk created by the negligent conduct of one or more employee(s) of Lifestream who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream Access Center and Psychiatric Hospital.

84. It is reasonably foreseeable that Curley and other persons who depend on a service animal for reasonable accommodation of disability would suffer damages from unreasonable or unnecessary exclusion of a service animal from Lifestream facilities.

85. The employee(s) of Lifestream who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream Access Center and Psychiatric Hospital were acting within the scope of their employment and their actions pertained to non-delegable duties of Lifestream.

86. Curley's damages were directly and proximately caused by the negligence of the Lifestream employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in the Lifestream facilities.

87. Lifestream is directly liable under the doctrine of *respondeat superior* for the negligence of the Lifestream employee(s) who informed the Sumter County Sheriff's Office that service animals were not permitted in Lifestream facilities.

88. Curley's damages include increased flashbacks and associated panic reactions, severe emotional and physical distress, intense fear, nightmares, inability to sleep, excessive crying and feelings of hopelessness, and other exacerbated symptoms of his disabilities.

89. The type(s) of damages suffered by Curley are within the zone of risk created by the negligence complained of herein. The type(s) of damages suffered by Curley were reasonably foreseeable by Lifestream as a consequence of unreasonable or unnecessary exclusion of a service animal from Lifestream facilities.

WHEREFORE, Plaintiff Thomas A. Curley requests judgment be entered in his favor against Defendant Lifestream Behavioral Center, Inc. and requests the following relief:

        a. An award of compensatory damages;

        b. Prejudgment and post-judgment interest as provided by law;

        c. Such other relief as this Court considers appropriate and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all questions of fact raised by this Complaint.

Dated this 7th day of March, 2015.

Respectfully Submitted,

/s/ **William B. Eppley**

William B. Eppley
FL Bar No. 151107
William B. Eppley, P.A.
123 North Main St.
Post Office Box 1478
Brooksville, FL 34605
(352) 796-7276
eppleylaw@yahoo.com
*Attorney for Plaintiff*

/s/ **Stanley R. Apps**

Stanley R. Apps
FL Bar No. 108868
Stanley R. Apps, P.A.
3904 W. Sevilla St.
Tampa, FL 33629
(310) 709-3966
stan.apps@gmail.com
*Attorney for Plaintiff*

18

# Exhibit A

 

Home | About | LifeStream Services | Locations | Careers | Links | Health Education | Contact Us

## NOTICE Under The Americans with Disabilities Act

LifeStream is committed to providing equal access to all persons with disabilities, including LifeStream consumers, potential consumers, companions and others.

To ensure effective communication, LifeStream provides qualified readers, qualified sign language and oral interpreters and other auxiliary aids and services, <u>free of charge</u>, for consumers, potential consumers, their companions and other individuals who are blind, have low visions, and/or are deaf or hard of hearing.

To request auxiliary aids or services, please contact (Tim Camp, QI/RM Director, (352)315-7511, <u>Tcamp@lsbc.net</u>).

The Americans with Disabilities Act (ADA) prohibits discrimination against people with disabilities. Pursuant to Title III of the ADA, persons who are blind, have low vision, and/or are deaf or hard of hearing have the right to request auxiliary aids and services to ensure effective communication.

For more information about the ADA, call the U.S. Department of Justice's toll-free ADA Information Line at 800-514-0301 (voice) or 800-514-0383 (TTY) or visit the ADA Home Page at <u>www.ada.gov</u>.

Copyright 2006 © LifeStream Behavioral Center
All rights reserved.

Site Created by
