UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

THOMAS A. CURLEY,

    Plaintiff,

v.                                            Case No: 5:15-cv-183-Oc-30PRL

LIFESTREAM BEHAVIORAL
CENTER, INC.,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13) and Plaintiff's response in opposition thereto (Doc. 16). The Court, having reviewed the motion and response, and being otherwise fully advised in the premises, concludes that Defendant's motion to dismiss should be granted in part and denied in part.

### BACKGROUND

On January 26 and 27, 2015, Plaintiff, who suffers from post-traumatic stress disorder ("PTSD"), severe depression, chronic anxiety, and hearing loss, was held for involuntary examination pursuant to Florida's Baker Act, Fla. Stat. § 394.463, at a Lifestream Behavioral Center, Inc. psychiatric facility due to a purported suicide threat. According to Plaintiff, no suicide threat was made; rather, the statement at issue was a miscommunication.

Plaintiff was speaking on the telephone with a representative from his insurance company, Optimum Healthcare, when he became upset and said "I'll pull the plug on you guys." The representative misunderstood Plaintiff and thought he said, "I want to pull the plug," which the representative interpreted as a threat to commit suicide. The representative then contacted the Sumter County Sheriff's Office, who dispatched deputies to Plaintiff's residence to take him into custody pursuant to the Baker Act.

When Plaintiff was taken into custody, he requested that he be permitted to bring his service dog, a black and tan Chihuahua named Tinker, with him. Tinker is trained to alert when Plaintiff shows signs of agitation related to his PTSD by pawing or licking him. At the time Plaintiff was taken into custody, Tinker was wearing a vest displaying the words "Service Dog on Duty," and Plaintiff showed the deputies his service animal card, which stated that he required access to his service animal as an accommodation of his disabilities. Additionally, Plaintiff showed the deputies a letter from his physician which also stated that Plaintiff required access to his service animal as an accommodation of his disabilities.

A dispatcher with the Sumter County Sheriff's Office contacted the Lifestream facility to inquire as to whether Tinker would be permitted at the facility, and was informed that service animals were not permitted. A neighbor took custody of Tinker while Plaintiff was held at the Lifestream facility.

When Plaintiff arrived at the facility, he requested access to Tinker as his service animal, but his request was not accommodated. Plaintiff was then transferred to the Leesburg Medical Regional Center for medical clearance where he was still separated from

Tinker. The Leesburg Medical Regional Center determined that Plaintiff was not suffering from medical complications, and Plaintiff was transferred back to the Lifestream facility. Plaintiff was held overnight at the Lifestream facility where he suffered severe traumatic flashbacks, anxiety, fear, and associated physical reactions such as heart palpitations and hyperventilation.

The next morning, Plaintiff underwent a psychiatric evaluation conducted by Lifestream employee Efrain Mendez. The evaluation reflects that Mendez was aware Plaintiff had requested access to Tinker; however, Plaintiff asserts that Mendez took no corrective action to unite Plaintiff with Tinker.

As a result of his custody at the Lifestream facility and his separation from Tinker, Plaintiff's preexisting impairments were exacerbated. Consequently, Plaintiff initiated this action against Lifestream Behavioral Center, Inc., asserting claims for (1) violation of section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, (2) violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, (3) negligent training and supervision, and (4) negligence. (Doc. 9).

## **DISCUSSION**

**A. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory allegations,

3

unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## B. Analysis

### 1. Section 504 of the Rehabilitation Act of 1973 (Count I)

Defendant argues that Plaintiff improperly seeks compensatory damages under Section 504. Section 504 permits an award of compensatory damages only where a plaintiff has asserted sufficient factual allegations from which the court can infer discriminatory intent. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *Id.* (citing *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)). Defendant asserts that Plaintiff's conclusory allegation that Defendant's employees demonstrated "deliberate indifference" is legally insufficient to sustain an award of compensatory damages under Section 504.

According to the Eleventh Circuit, deliberate indifference "is an exacting standard, which requires showing more than gross negligence. To establish deliberate indifference, a plaintiff must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Id.* (citations and internal quotation marks omitted). Plaintiff attempts to establish deliberate indifference by alleging that (1) multiple Lifestream employees knew of the harm to Plaintiff's rights because he specifically notified them of the harm; and (2) multiple Lifestream employees created and

reviewed records which demonstrate that they received notice of the harm. These allegations go beyond the conclusory allegations highlighted by Defendant. Thus, Plaintiff has alleged sufficient facts to state a claim for compensatory damages under Section 504 at this stage of the proceedings.

### 2. ADA (Count II)

Next, Defendant contends that Plaintiff does not have standing to pursue injunctive relief under the ADA because Plaintiff has not established facts giving rise to an inference that he will suffer future discrimination by Defendant. Article III grants federal courts judicial power to decide only cases and controversies. *Allen v. Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). The constitutional minimum requirements for standing are: (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). With respect to ADA cases, "courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference

5

that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

In the present case, Plaintiff asserts that his impairments cause "impulsive verbal behaviors," which "place him at a high degree of risk of being again subjected to involuntary mental health examination at Lifestream's facility." Plaintiff also alleges that Lifestream is the designated receiving facility in Sumter County, where Plaintiff resides, for individuals subject to involuntary commitment under the Baker Act. At this stage of the proceedings, the nature of Plaintiff's impairments and the proximity of the Lifestream facility is sufficient to establish standing for injunctive relief under the ADA. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:11-cv-1387-Orl-31GJK, 2012 WL 207025, at *2 (M.D. Fla. Jan. 24, 2012).

### 3. Negligent Training and Supervision (Count III) & Negligence (Count IV)

Defendant argues that Plaintiff's claims for negligent training and supervision and negligence (collectively the "negligence claims") fail because Plaintiff's allegations supporting these claims are inextricably intertwined with his allegations that Defendant violated the ADA, and therefore the underlying wrong is not a common law tort as required to support the negligence claims.

"To prevail on a claim of negligent supervision, retention, or training, the plaintiff must demonstrate that the defendant employer owes a duty to the plaintiff, the breach of which is the proximate cause of the plaintiff's injuries." *Latson v. Hartford Ins.*, No. 6:05-cv-1435-Orl-19KRS, 2006 WL 485097, at *4 (M.D. Fla. Feb. 28, 2006) (citing *Watson v. City of Hialeah*, 552 So. 2d 1146 (Fla. 3d DCA 1989)). Similarly, a claim of negligence

6

requires a showing that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the breach caused injury to the plaintiff, and (4) the plaintiff suffered damages as a result. *Meyers v. City of Jacksonville*, 754 So. 2d 198, 202 (Fla. 1st DCA 2000).

The underlying wrong for claims of negligent training and supervision must be a common law tort. *See Footstar Corp. v. Doe*, 932 So. 2d 1272, 1278 (Fla. 2d DCA 2006) ("'[T]he underlying wrong allegedly committed by an employer in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law.'" (quoting *Scelta v. Delicatessen Support Serv., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)).  Similarly, to bring a negligence claim in the context of public accommodation "a plaintiff must identify a recognized duty at common law." *White v. NCL Am., Inc.*, No. 05-22030-CIV, 2006 WL 1042548, at *6 (S.D. Fla. Mar. 8, 2006).  In other words, Plaintiff cannot rely on an alleged violation of the ADA to support his negligence claims.

Plaintiff alleges that Defendant failed to properly train and supervise its employees regarding the proper measures for responding to an individual suffering from traumatic flashbacks and impulsive verbal behaviors and outbursts caused by PTSD.  Plaintiff also alleges that Defendant failed to properly train and supervise its employees regarding recognizing and responding to signs of acute distress exhibited by persons suffering from PTSD and psychiatric and neurological disabilities.  Similarly, Plaintiff alleges that Defendant was negligent under a theory of respondeat superior because Defendant's

employees negligently failed to recognize and respond appropriately to Plaintiff's acute distress due to PTSD.

Reading the complaint as a whole, these allegations are premised upon Defendant's employees' refusal to allow Plaintiff's service animal in the facility as related to the treatment of Plaintiff's medical condition. Although Plaintiff's ADA claim is premised upon the same factual allegations as the negligence claims, the claims are not mutually exclusive. In other words, Defendant's employees' refusal to allow Plaintiff's service animal into the psychiatric facility may be a violation of the ADA, but it could also constitute the basis for a common law action to the extent it is premised upon a breach of a recognized duty under Florida common law. *See id.* (noting that a plaintiff can bring a common law action arising from the same facts that constitute a violation of the ADA so long as the plaintiff can identify a recognized common law duty independent of the ADA standards).

Plaintiff identifies the duty of ordinary care owed by a proprietor of a place of public accommodations as the common law duty underlying his negligence claims. However, Plaintiff has cited no Florida law recognizing the duty of a proprietor of a place of public accommodation to recognize and respond appropriately to a patron exhibiting symptoms of a mental health disorder, such as PTSD. Because Plaintiff has not identified a recognized duty under Florida law, his negligence claims fail. Thus, Plaintiff's negligence claims should be dismissed without prejudice with leave to refile if he can identify a *recognized* duty under Florida law.

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 13) is GRANTED in part and DENIED in part.

2. Counts III and IV of Plaintiff's amended complaint (Doc. 9) are DISMISSED without prejudice.

3. Within fourteen (14) days of the date of this Order Plaintiff may file a second amended complaint correcting the deficiencies noted above.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of August, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record